## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KUO HSIUNG YANG,          )
                         )
        Petitioner,    )
                         )
        v.               )       1:16CR140
                         )       1:17CV959
UNITED STATES OF AMERICA,  )
                         )
        Respondent.    )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket Entry 35) ("Section 2255 Motion").[1] For the reasons that follow, the Court should deny relief.

### BACKGROUND

The Court (per now-Chief United States District Judge Thomas D. Schroeder) entered a Judgment sentencing Petitioner to, inter alia, a prison term of 110 months (Docket Entry 29 at 2), upon his guilty plea to Count One of his Indictment, which charged him with receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) & (b)(1) (Docket Entry 1 at 1; Docket Entry 13 at 1).  Petitioner thereafter timely filed his Section 2255 Motion, raising these three claims:

---

[1] Parenthetical citations refer to Petitioner's above-captioned criminal case.

1) "[t]he guilty plea was not knowingly and voluntarily entered because . . . counsel failed to learn about and advise [Petitioner] concerning a viable motion to suppress" (Docket Entry 35, ¶ 12(Ground One));

2) "[i]neffective assistance of counsel in failing to learn about and research a viable motion to suppress and then to file and litigate [such] motion" (<u>id.</u>, ¶ 12(Ground Two)); and

3) "[i]neffective assistance of counsel at sentencing for failing to develop and argue that Amendment 801 to the applicable sentencing guidelines justified the rejection of a two-point enhancement for knowing distribution of child pornography" (<u>id.</u>, ¶ 12(Ground Three)).

For "[s]upporting facts" for each of those Grounds, the Section 2255 Motion refers to Petitioner's contemporaneously filed "Attachment[s]" (<u>Id.</u>, ¶ 12(Ground One)(a), (Ground Two)(a), and (Ground Three)(a) (cross-referencing Docket Entries 35-1 ("Attachment One"), 35-2 ("Attachment Two"), and 35-3 ("Attachment Three"), respectively).) Attachments One, Two, and Three consist of six (collective) pages of arguments in support of the Section 2255 Motion (Docket Entry 35-1 at 1–2; Docket Entry 35-2 at 1–2; Docket Entry 35-3 at 1–2); none bears Petitioner's signature (under

2

oath or otherwise) (Docket Entry 35-1 at 2; Docket Entry 35-2 at 2; Docket Entry 35-3 at 2).[2]

The United States responded (Docket Entry 42) (the "Response"), attaching an affidavit from Petitioner's (former) counsel (Docket Entry 42-1) ("Counsel's Affidavit"). Petitioner replied (Docket Entry 47) (the "Reply"), likewise tendering a sworn statement from Petitioner (Docket Entry 47-1) ("Petitioner's Affidavit").

## DISCUSSION

Petitioner possessed a federal constitutional right to effective assistance of counsel in his criminal case in this Court. See U.S. Const. amend. VI; McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). To establish an ineffective assistance claim, Petitioner must show that his counsel's performance fell below a reasonable standard for defense attorneys and that prejudice resulted. See Strickland v. Washington, 466 U.S. 668, 687-94 (1984). "Surmounting Strickland's high bar is never an easy task. . . . [T]he standard for judging counsel's representation is a most deferential one." Harrington v. Richter, 562 U.S. 86, 105

---

[2] Because Petitioner did not verify Attachments One, Two, or Three, any factual assertions therein do not constitute competent evidence in this collateral action. See, e.g., United States v. Rhodes, No. 3:08CR82, 2013 WL 150335, at *3 (E.D. Va. Jan. 14, 2013) (unpublished) ("[U]nsworn allegations cannot constitute a basis for habeas relief. Facts alluded to in an unsworn memorandum will not suffice." (internal quotation marks omitted)), aff'd in part and appeal dismissed in part, 531 F. App'x 279 (4th Cir. 2013).

3

(2011) (internal quotation marks omitted); see also United States
v. Galloway, 749 F.3d 238, 241 (4th Cir. 2014) ("To meet th[e
prejudice] element of an ineffective assistance claim, [the
defendant] would have to show that there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different and that the
result of the proceeding was fundamentally unfair or unreliable."
(internal quotation marks omitted)).  Moreover,

> in order to prove prejudice in the guilty plea context,
> a person challenging his conviction must establish "a
> reasonable probability that, but for counsel's errors, he
> would not have pleaded guilty and would have insisted on
> going to trial."  The Supreme Court has specified,
> furthermore, that such an individual "must convince the
> court" that such a decision "would have been
> [objectively] rational under the circumstances."

United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (internal
citations omitted) (quoting Hill v. Lockhart, 474 U.S. 52, 59
(1985), and Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).

<u>Ground One</u>

Ground One of the Section 2255 Motion attacks Petitioner's
guilty plea as involuntary and unknowing due to Petitioner's
counsel's "fail[ure] to learn about and advise [Petitioner]
concerning a viable motion to suppress."  (Docket Entry 35,
¶ 12(Ground One); see also Docket Entry 35-1 at 1 (describing
Ground One as alleging that "[Petitioner]'s guilty plea was
unknowing and involuntary due to" counsel's failure to advise
Petitioner about the possibility of pursuing suppression based on

4

the "illegal and unconstitutional search warrant" (all-caps font and emphasis omitted)).) In support of that claim, Attachment One explains that law enforcement accessed the evidence[3] underlying Petitioner's indictment by means of a search warrant "issued by a court outside the Middle District of North Carolina," the location of Petitioner's computer. (Docket Entry 35-1 at 1.)

---

[3] The Presentence Report, which the Court (per now-Chief Judge Schroeder) "adopt[ed] . . . without any change" (Docket Entry 39 at 5) at Petitioner's sentencing hearing, states that "[Petitioner] came to the attention of federal investigators as they were investigating a website named 'Playpen[,]' which actively advertised and distributed child pornography" (Docket Entry 22, ¶ 3). Users accessed Playpen anonymously by means of a "publicly available software" that "allowed users to hide sites they visited[ and] prevent[ed] sites from obtaining the [user's] internet protocol (IP) address." (Id.) On February 20, 2015, law enforcement seized "the computer server hosting Playpen[,] . . . transported the server to Newington, Virginia, and allowed the website to remain active from February 20, 2015, to March 4, 2015." (Id., ¶ 5.) During that time, "law enforcement agents, acting pursuant to an order of the United States District Court for the Eastern District of Virginia, monitored users of Playpen." (Id.) On the same date law enforcement seized the server, the government obtained a search warrant from "the United States District Court for the Eastern District of Virginia . . . [that] allow[ed] law enforcement agents to deploy a Network Investigative Technique ('NIT') on Playpen in an attempt to identify the actual IP addresses and other identifying information of computers used to access Playpen." (Id., ¶ 11.) Through use of the NIT, law enforcement agents monitored Playpen and discovered a Playpen user with an IP address registered to Petitioner (at a former address). (Id., ¶¶ 12-15.) Upon further investigation, law enforcement agents confirmed Petitioner's identity, learned Petitioner's then-current address, and obtained a search warrant. (Id., ¶¶ 15-16.) Execution of the search warrant at Petitioner's residence led to the discovery of numerous electronic devices containing child pornography. (Id., ¶ 16.) In an interview "during the execution of the [search] warrant[, . . . Petitioner] confessed that he found images and videos of child pornography on random websites." (Id., ¶ 18.)

5

Attachment One further asserts that such procedure violated Federal Rule of Criminal Procedure 41(b), which authorizes a magistrate judge "to issue a search warrant for a person or property located within the judicial district where the magistrate judge sits." (Id.) On that basis, Attachment One contends that "[Petitioner] could have pursued a motion to suppress the evidence seized from his computer on both constitutional and statutory grounds." (Id.) However, according to Attachment One, Petitioner's counsel failed to "advise him about [that] option" before Petitioner pleaded guilty. (Id.) In Petitioner's Affidavit, Petitioner averred to his lack of awareness about the potential merits of a suppression motion and swore that "[he did] not believe that [his] guilty plea was knowingly and voluntarily entered under those circumstances." (Docket Entry 47-1, ¶¶ 4-7.)

The Court should deny relief on Ground One. When, as here,

> a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea . . . .

Tollett v. Henderson, 411 U.S. 258, 267 (1973). A defendant pleads guilty voluntarily when he understands "the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel" and when no threats, misrepresentation, or improper promises influenced the decision to

6

plead guilty.  Brady v. United States, 397 U.S. 742, 755 (1970) (internal quotation marks omitted).  To make an intelligent guilty plea, a defendant must possess "control of his mental faculties" and know "the nature of the charge against him."  Id. at 756.

Critically, "[a] plea is not rendered unintelligently made simply because, long after the plea was entered, the defendant realizes his cost-benefit analysis as to whether to go to trial or to plead guilty did not correctly take into account every relevant factor which entered into his decision."  Wilson v. United States, No. 4:17-CV-4044, 2018 WL 4334070, at *9 (D.S.D. Jan. 2, 2018) (unpublished), recommendation adopted, 2018 WL 3472631 (D.S.D. July 19, 2018) (unpublished).  More particularly, "a counseled defendant may not make a collateral attack on a guilty plea on the allegation that he misjudged the admissibility of [evidence against him]."  United States v. Broce, 488 U.S. 563, 572 (1989); see also Tollett, 411 U.S. at 267 ("A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge . . . .").  Rather, to invalidate a guilty plea based on counsel's advice in connection with such plea, a habeas petitioner must establish ineffective assistance of counsel.  See United States v. Langston, 818 F. Supp. 1199, 1203 (N.D. Ill. 1993) ("[A]bsent a valid claim of ineffective assistance of counsel, counsel's failure to provide advice 'cannot serve as the predicate

for setting aside a valid plea.'" (quoting Broce, 488 U.S. at 574)); see also Wilson, 2018 WL 4334070, at *9 ("Where a habeas petitioner collaterally attacks his plea by arguing that counsel was ineffective in advising petitioner to plead guilty, the petitioner must show not only that his counsel's performance was deficient, he must also show that he was prejudiced by counsel's substandard advice.").

Here, Petitioner's attempt to "attack the voluntary and intelligent character of [his] guilty plea," Tollett, 411 U.S. at 267, entitles him to no relief. His sworn statements at the plea hearing undermine any claim that he pleaded guilty unknowingly or involuntarily. In that regard, after taking an oath (see Docket Entry 38 at 3), Petitioner swore before now-Chief Judge Schroeder, inter alia, that Petitioner and his counsel had "fully discussed the charges in the [I]ndictment and [the] case in general," as well as "all the possible defenses [he] may have" (id. at 4), that he was "fully satisfied with [counsel's] services" (id. at 5), that he agreed with "the statements in the factual basis" (id. at 18), that he "amitt[ed] each of the elements of the offense" (id. at 17), and that he was "pleading guilty [pursuant to a written plea agreement] because [he was], in fact, guilty" (id.). "A defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity, because courts must be able to rely on the defendant's statements made under oath during a properly

conducted Rule 11 plea colloquy." <u>United States v. Lemaster</u>, 403
F.3d 216, 221 (4th Cir. 2005) (internal brackets, citations,
ellipses, and quotation marks omitted).  "Thus, in the absence of
extraordinary circumstances,  . . . [the C]ourt should, without
holding an evidentiary hearing, dismiss any [Section] 2255 motion
that necessarily relies on allegations that contradict [such] sworn
statements." <u>Id.</u> at 221-22.  Petitioner has not identified any
extraordinary circumstances.  (<u>See</u> Docket Entry 35, ¶ 12(Ground
One); Docket Entry 35-1 at 1-2.)

That conclusion holds despite Petitioner's contention that any
lack of advice concerning a potential suppression motion rendered
Petitioner's plea involuntary or unknowing (Docket Entry 35-1 at 1;
Docket Entry 47 at 7.)  In particular, Attachment One endorses the
broad proposition that "a defendant's guilty plea [may] be set
aside due to inaccurate advice [from defense counsel] . . . about
the applicable law."  (Docket Entry 35-1 at 1 (citing <u>Finch v.
Vaughn</u>, 67 F.3d 909, 916 (11th Cir. 1995).)  In <u>Finch</u>, a habeas
petitioner secured the right to withdraw his guilty plea because
his counsel had misadvised him about whether "the plea bargain
would enable him to serve his federal and state sentences
concurrently," <u>Finch</u>, 67 F.3d 909 at 917.  <u>Id.</u> at 914-17.  Notably,
"the record support[ed the petitioner's] contention . . . that he
was induced to plead guilty by his counsel's erroneous advice,"
which rose to the level of ineffective assistance of counsel and

9

went to "the essence of [the petitioner's] decision to plead guilty." Id. at 917; see also id. at 915 ("In exchange for pleading guilty on the morning of his trial, Finch understood that his state term of imprisonment would be concurrent with the balance of his federal sentence.").

Put simply, no essential misunderstanding occurred here. To the contrary, at the plea hearing, Petitioner swore to his "satisf[action] that [he had] fully explored . . . all the possible defenses [he may have] to the charges" (Docket Entry 38 at 4). No pertinent authority requires "conscious waiver . . . with respect to each potential defense relinquished by a plea of guilty." Broce, 488 U.S. at 573 (emphasis added). Moreover, "the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge . . . but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." United States v. Ruiz, 536 U.S. 622, 630-31 (2002) (collecting cases). Finally, as explained in connection with Ground Two, Petitioner has not shown that he received ineffective assistance of counsel at the plea phase.

To the extent the Reply changes tacks in another attempted end-run around Tollett, that argument likewise misses the mark. More specifically, the Reply invokes Lee v. United States, ___ U.S.

10

___, 137 S. Ct. 1958 (2017), to argue that counsel's failure to advise Petitioner about the potential for suppression invalidated Petitioner's guilty plea. (Docket Entry 47 at 4-5 (citing Lee, ___ U.S. at ___, 137 S. Ct. at 1965).) According to the Reply, Lee teaches that "[Petitioner] need only show [a] 'reasonable probability' he would have rejected [the] plea if counsel had performed effectively" (id. at 5) and that such decision "need not be deemed either rational or reasonable" (id. at 6). However, Lee bears not on the validity of a guilty plea but on whether "a defendant with no viable defense [can] show prejudice from the denial of his right to trial," Lee, ___ U.S. at ___, 137 S. Ct. at 1966. In Lee, a habeas petitioner raised a successful ineffective assistance claim based on counsel's erroneous advice concerning the immigration consequences of the petitioner's guilty plea. Id. at ___, 137 S. Ct. at 1962, 1969. The record indisputably reflected that (i) the petitioner had "received objectively unreasonable representation," id. at ___, 137 S. Ct. at 1962, and (ii) "deportation was the determinative issue in [the petitioner's] decision whether to accept the plea," id. at ___, 137 S. Ct. at 1963 (internal quotation marks omitted). Under those "unusual" circumstances, the Supreme Court concluded that the petitioner could show prejudice even if proceeding to trial would have

11

amounted to a "Hail Mary," id. at ___, 137 S. Ct. at 1967. Id. at ___, 137 S. Ct. at 1968-69.[4]

Petitioner's analogy to Lee does not aid his cause, particularly in light of his insistence that Ground One "is not a claim of ineffective assistance" (Docket Entry 47 at 5 n.3). As more fully discussed in the following subsection, Petitioner has not demonstrated "objectively unreasonable representation," Lee, ___ U.S. at ___, 137 S. Ct. at 1962, even if Petitioner's counsel failed to advise him about arguments in favor of suppression (Docket Entry 47 at 4-5 (noting Counsel's Affidavit's silence on that subject); see also Docket Entry 42-1, ¶¶ 1-10 (omitting discussion of suppression issues).) See Hamm v. United States, Nos. CV 118-192, CR 117-27, 2019 WL 2913328, at *9 (S.D. Ga. June 14, 2019) (unpublished) ("Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses."), recommendation adopted, 2019 WL 2913274 (S.D. Ga. July 5, 2019) (unpublished), cert. of appealability denied, 2020 WL 1249379 (11th Cir. Feb. 12, 2020) (unpublished). Also unlike in Lee, the record here fails to reflect a single "determinative issue

_____

[4] In so holding, Lee reversed the United States Court of Appeals for the Sixth Circuit, which had rejected Lee's ineffective assistance claim on prejudice grounds, concluding that "no rational defendant charged with a deportable offense and facing overwhelming evidence of guilt would proceed to trial rather than take a plea deal with a shorter prison sentence[.]" Lee, ___ U.S. at ___, 137 S. Ct. at 1964 (quoting Lee v. United States, 825 F.3d 311, 314 (6th Cir. 2016)).

12

in [Petitioner's] decision whether to accept the plea," <u>Lee</u>, ___
U.S. at ___, 137 S. Ct. at 1963 (internal quotation marks omitted).
As addressed in the following subsection, any suggestion that
suppression constituted such an issue for Petitioner (<u>see</u> Docket
Entry 47-1, ¶¶ 5-6), constitutes a self-serving, conclusory
statement that cannot overcome Petitioner's sworn responses during
his plea colloquy. <u>Lemaster</u>, 403 F.3d at 221-22. At bottom, <u>Lee</u>
offers no support for Petitioner's bald conclusion that he pleaded
guilty unknowingly or involuntarily.

Accordingly, Ground One fails as a matter of law.

Ground Two

Ground Two of Petitioner's Section 2255 Motion claims that
counsel rendered ineffective assistance by "failing to learn about
and research a viable motion to suppress and then [failing] to file
and litigate [such] motion." (Docket Entry 35, ¶ 12(Ground Two;
<u>see also</u> Docket Entry 35-2 at 1-2.) Attachment Two relates the
circumstances of the search warrant in Petitioner's criminal case
and references two cases in which courts ordered the suppression of
evidence obtained under similar circumstances. (Docket Entry 35-2
at 1 (citing <u>United States v. Levin</u>, 186 F. Supp. 3d 26, 31-42 (D.
Mass. 2016), and <u>United States v. Ammons</u>, 207 F. Supp. 3d 732,
738-41 (W.D. Ky. 2016)). Attachment Two faults Petitioner's
counsel for not advising Petitioner about those potential
suppression arguments, characterizes such (lack of) advice as

13

deficient, and asserts that Petitioner suffered prejudice as a result. (Id. at 1–2). In Petitioner's Affidavit, Petitioner averred in conclusory fashion that he would have pursued a suppression motion if he had known about that option and that he would have proceeded to trial rather than plead guilty. (Docket Entry 47-1, ¶¶ 4–6.)

Ground Two lacks merit for at least two reasons. First, Petitioner's guilty plea bars a collateral attack grounded in his counsel's failure to advise him about and litigate the potential suppression issue. Under Tollett, Petitioner's "guilty plea represents a break in the chain of events which has preceded it in the criminal process," Tollett, 411 U.S. at 267. Consequently, Petitioner cannot assert an ineffectiveness claim relating to matters preceding the plea. See Shabazz v. United States, Civ. No. 03–10277, Crim. No. 00–20068, 2007 WL 1835549, at *1 (E.D. Mich. June 25, 2007) (unpublished) ("[T]he argument that [his] attorney was ineffective in failing to file a motion to suppress [i]s precluded by [his] guilty plea under the rule in Tollett." (internal citation omitted)); see also Alonso v. United States, No. 11CV998, 2013 WL 1759938, at *2 (E.D.N.Y. Apr. 24, 2013) (unpublished) (rejecting "argu[ment] that attorney [] provided ineffective assistance during the plea stage . . . [because he] should have . . . filed a suppression motion," as that claim "relate[d] to the legal assistance provided by counsel prior to

14

[the] petitioner's guilty plea . . . [and] a defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea" (internal brackets and quotation marks omitted)); United States v. Rosas, Nos. CIV 11-474, CR 02-1016 & 08-123, 2012 WL 786248, at *9 (D. Ariz. Mar. 9, 2012) (unpublished) ("[The petitioner] asserts that he was denied the effective assistance of counsel where counsel failed to . . . move to suppress evidence . . . . [Such] claims of ineffective assistance of counsel relating to pre-plea matters that are unrelated to the plea itself do not survive a guilty plea under *Tollett*.").

Second, even if the Court overlooked the Tollett bar, Petitioner cannot demonstrate prejudice, a necessary showing for the ineffectiveness claim he asserts in Ground Two. As an initial matter, a few years after Petitioner's conviction, the United States Court of Appeals for the Fourth Circuit resolved (contrary to Petitioner's position) the precise suppression issue on which Petitioner has staked his counsel's ineffectiveness. See United States v. McLamb, 880 F.3d 685, 690-91 (4th Cir. 2018) (rejecting suppression argument based on magistrate judge's jurisdiction to issue search warrant and applying good-faith exception to exclusionary rule). Petitioner's Reply acknowledges that McLamb forecloses any showing of prejudice but nonetheless "presses the

claim" to preserve the issue in case the Supreme Court of the United States rejects <u>McLamb</u>. (Docket Entry 47 at 9.)[5]

Ground Two also falls short in another (related) respect. To demonstrate prejudice for an ineffective assistance claim following a guilty plea, Petitioner "must establish 'a reasonable probability that, but for counsel's [alleged] errors, he would not have pleaded guilty and would have insisted on going to trial,'" <u>Fugit</u>, 703 F.3d at 260 (quoting <u>Hill</u>, 474 U.S. at 59), as well as "that such a decision 'would have been rational under the circumstances,'" <u>id.</u> (quoting <u>Padilla</u>, 559 U.S. at 372). Petitioner's Affidavit offers only Petitioner's bare declaration that "[he] would not have pled guilty" if his counsel had advised him about the potential basis for suppression (Docket Entry 47-1, ¶ 5).

---

[5] Prior to conceding his inability to show prejudice in light of <u>McLamb</u>, Petitioner asserted that, "[e]ven if it did not necessarily lead to suppression of the materials [proving he received child pornography], the filing [of] a motion to suppress likely would have gained [him] substantial bargaining power with regard to a possible plea agreement." (Docket Entry 35-1 at 1; <u>see also</u> Docket Entry 35-2 at 1 ("[Petitioner] was prejudiced by this deficient performance [in failing to raise the suppression issue] as he could have [] gained a substantial advantage in his negotiating posture . . . .").) That plea-leverage contention directly contradicts Petitioner's bald assertion that he would have gone to trial if properly advised about this issue. (<u>See</u> Docket Entry 47-1, ¶ 5.) Moreover, the speculative character of that contention (i.e., the lack of any evidence that the United States would have offered Petitioner a more favorable plea to avoid litigation of this issue) also renders it insufficient to establish prejudice. <u>See</u> <u>United States v. Basham</u>, 789 F.3d 358, 375 (4th Cir. 2015) ("[T]o succeed on his ineffective assistance claims, [the petitioner] is not entitled to satisfy the prejudice requirement though rank speculation . . . ." (internal quotation marks omitted)).

Such conclusory allegations do not suffice. See, e.g., United States v. Harris, 404 F. App'x 264, 267 (10th Cir. 2010) ("[The petitioner] offers nothing more than his own word that he would not have pleaded guilty but for counsel's errors, and conclusory allegations are insufficient to support an ineffective assistance of counsel claim."); Peacock v. Sherry, No.07-12215, 2009 WL 2900701, at *1 (E.D. Mich. Sept. 3, 2009) (unpublished) ("[The p]etitioner's conclusory statement that he would have insisted on going to trial absent his counsel's ineffective representation falls well short of the standard required to state an ineffective-assistance claim in the plea-bargain context."); Simon v. McDonough, No. 3:05CV396, 2007 WL 4181030, at *12 (N. D. Fla. Nov. 20, 2007) (unpublished) ("Conclusory, self-serving, after-the-fact statements that [the p]etitioner would not have pled and would have insisted on going to trial do not meet [the prejudice] requirement."); see also Ward v. United States, Nos. 1:10CR208, 1:13CV168, 2016 WL 1032847, at *4 (M.D.N.C. Mar. 15, 2016) (unpublished) ("Unsupported, conclusory allegations [in a motion under Section 2255] do not warrant an evidentiary hearing, much less relief.") (citing Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999)).

For the foregoing reasons, the Court should reject Ground Two.

17

According to Ground Three of the Section 2255 Motion, Petitioner received "[i]neffective assistance of counsel at sentencing" because his counsel "fail[ed] to develop and argue that Amendment 801 to the applicable sentencing guidelines justified the rejection of a two-point enhancement for knowing distribution of child pornography." (Docket Entry 35, ¶ 12(Ground Three); see also Docket Entry 35-3 at 1 (indicating that Ground Three challenges counsel's failure to request "a reduced sentence based on Amendment 801, which clarified that an enhancement for distribution should only apply if [Petitioner] knowingly distributed child pornography" (all-caps font and emphasis omitted)).) In particular, Attachment Three explains that Petitioner received a two-level enhancement at sentencing pursuant to U.S.S.G. § 2G2.2(b)(3)(F) (2015), because "the offense involved distribution" (Docket Entry 22, ¶ 48 (quoting then-operative guidelines language)). (Docket Entry 35-3 at 1 (citing Docket Entry 22, ¶ 45.)[6] Attachment Three further asserts that Amendment 801 would have required "the government [to] prove[ Petitioner] knowingly engaged in the distribution of child pornography" in order for the two-level enhancement to apply. (Id.) The Reply maintains that the government would have failed to

---

[6] Attachment Three contains a typographical error as to the paragraph containing the distribution enhancement. (Compare Docket Entry 22, ¶ 45 (indicating that 2015 Guidelines Manual applied), with Docket Entry 22, ¶ 48 (applying distribution enhancement).)

18

carry that burden because "[n]o evidence indicated [Petitioner] knowingly engaged in [such] distribution." (Docket Entry 47 at 10.) As a result, the Reply concludes that Petitioner's counsel's failure to object deprived Petitioner of a lower offense level and "substantially lower sentence." (Id. at 12.)

Ground Three errantly relies on the premise that Amendment 801 changed the law in the Fourth Circuit. In that regard, Amendment 801 determined that the two-level distribution enhancement under U.S.S.G. § 2G2.2(b)(3)(F) should apply "[i]f the defendant knowingly engaged in distribution." U.S.S.G. Supp. App'x C p. 139 (Nov. 1, 2016). "For purposes of subsection (b)(3), the defendant 'knowingly engaged in distribution' if the defendant (A) knowingly committed the distribution, (B) aided, abetted, counseled, commanded, induced, procured, or willfully caused the distribution, or (C) conspired to distribute." Id. at 140. As concerns the use of a peer-to-peer file-sharing program ("a software application that enables computer users to share files easily over the Internet"), id. at 144, Amendment 801 instructed that the enhancement should apply only when a defendant evinced the requisite mens rea. Id. at 144–45 (noting contrary approach in Fifth, Tenth, and Eleventh Circuits). In specifying such mens rea, Amendment 801 "generally adopt[ed] the approach of the Second, Fourth, and Seventh Circuits," id. at 145 (emphasis added), all of which had "require[d] a showing that the defendant knew of the

19

file-sharing properties of the [peer-to-peer] program," id. at 144–45 (citing, inter alia, United States v. Layton, 564 F.3d 330, 335 (4th Cir. 2009)). The two-level distribution enhancement applied in Layton because the defendant in that case had "created and used a shared folder that he knew others could access to download his child pornography files." Layton, 564 F.3d at 335.

In light of the foregoing discussion, Petitioner cannot show that counsel rendered ineffective assistance at sentencing. Although Petitioner has suggested that Amendment 801 provided a basis for rejecting the two-level distribution enhancement in his case (Docket Entry 35-3 at 1; Docket Entry 47 at 12), that contention reflects a misunderstanding of Fourth Circuit law.[7]

_____

[7] More specifically, Petitioner has argued that "[i]f the Fourth Circuit followed the Eighth and Eleventh Circuits, as Layton indicated, and [Amendment 801] narrowed the rule in those circuits, then the amendment narrowed the rule in the Fourth Circuit" (Docket Entry 47 at 11). Layton did invoke decisions from those two courts in deciding to uphold application of the two-level distribution enhancement. See Layton, 564 F.3d at 335 (citing United States v. Griffin, 482 F.3d 1008, 1010-12 (8th Cir. 2007), and United States v. Mathenia, 409 F.3d 1289, 1290 (11th Cir. 2005)). However, as later required by Amendment 801, Griffin had discussed indicia of knowledge with respect to distribution. See Griffin, 482 F.3d at 1013 ("[The defendant] admitted that he downloaded child pornography files from Kazaa, knew that Kazaa was a file-sharing network, and knew that, by using Kazaa, other Kazaa users could download files from him." (emphasis added)). The defendant in Mathenia had "admitted in his plea agreement to knowingly possessing and distributing . . . images of child pornography." Mathenia, 409 F.3d at 1290 (emphasis added). In post-Layton cases, the United States Courts of Appeals for the Eighth Circuit and for the Eleventh Circuit diverged from their earlier approaches (which Layton favorably cited). See United States v. Dodd, 598 F.3d 449, 452 (8th Cir. 2010) (holding that use of file-sharing program (continued...)

Moreover, Petitioner has failed to rebut his counsel's sworn statement that the two "discussed peer[-]to[-]peer file[-]sharing programs and how some of these programs make a user's files available to others searching for similar material, unless the feature is disabled" (Docket Entry 42-1, ¶ 7).  Nor has Petitioner challenged his counsel's averment that "[Petitioner's counsel] advised [Petitioner] that [they] were unlikely to win an argument against the two-point adjustment and should focus on making a credible argument for a substantial variance" (id., ¶ 8).  On that score, Petitioner's Affidavit corroborated Counsel's Affidavit, insofar as "[Petitioner] recall[ed] that, before [he] entered the guilty plea, [counsel] told [him] that arguing about distribution would be challenging" (Docket Entry 47-1, ¶ 8).

In any event, the record supports the application of the two-level knowing distribution enhancement because Petitioner in fact "knowingly engaged in distribution," U.S.S.G. § 2G2.2(b)(3)(F).

<hr/>

[7](...continued)
raises presumption of knowledge as to distribution); United States v. Creel, 783 F.3d 1357, 1359–61 (11th Cir. 2015) (concluding that distribution enhancement possessed no mens rea requirement).  To the extent Amendment 801 "narrowed the rule" (Docket Entry 47 at 11) in the Eighth and Eleventh Circuits, that narrowing occurred as a result of post-Layton decisions that had qualified or abandoned the knowledge requirement.  See United States v. Monetti, 705 F. App'x 865, 867 n.1 (11th Cir. 2017) (recognizing inconsistency between Amendment 801 and Creel); U.S.S.G. Supp. App'x C p. 145 (Nov. 1, 2016) (describing without adopting Dodd approach); see also United States v. Hansen, 859 F.3d 576, 577–78 (8th Cir. 2017) (acknowledging that Amendment 801 superseded "contrary precedents," but upholding application of five-level enhancement).

Circumstantial evidence may supply the requisite proof of knowledge about the file-sharing properties of peer-to-peer programs. See United States v. Cates, 897 F.3d 349, 358–60 (1st Cir. 2018) (discussing Amendment 801's knowledge requirement and upholding application of distribution enhancement based on circumstantial evidence of knowledge). In particular, as the United States has noted in its Response (Docket Entry 42 at 11–12), the Presentence Report, which the Court (per now-Chief Judge Schroeder) "adopt[ed] . . . without any change" (Docket Entry 39 at 5) and to which Petitioner filed no objections (Docket Entry 22 at 59),[8] states that Petitioner's electronic devices revealed "numerous file[-]sharing software programs" (id., ¶ 22). Additionally, Petitioner maintained a directory titled "Special_Files_To_Share" in one such program. (Id.) Finally, "the forensic examination noted that [Petitioner had] shared files as far back as April 6, 2009." (Id.) Taken together with Petitioner's "technical competence," Cates, 897 F.3d at 359, and his status as an advanced

_____

[8] Petitioner's Affidavit states that "[Petitioner] did not know it was possible to object to items in the Presentence Investigation Report." (Docket Entry 47-1, ¶ 10.) The record blatantly contradicts that assertion, as now-Chief Judge Schroeder twice advised Petitioner about such right. (See Docket Entry 38 at 12–13 ("[Y]ou can file any objections if you disagree with any aspect of the [Presentence Report], including any objection to the facts or any objection to any of the recommendations that the probation office makes as to a sentencing range under the United States Sentencing Guidelines[.]"), 19 ("You will be given the opportunity to review the [Presentence R]eport before your sentencing hearing. If you have any objections, you can file them through your counsel[.]").)

22

degree holder in the medical field (Docket Entry 22, ¶ 75), such evidence more than adequately supports the conclusion that Petitioner "knowingly engaged in distribution," U.S.S.G. § 2G2.2(b)(3)(F). As a result, Petitioner cannot show that he received ineffective assistance by his counsel's failure to challenge the distribution enhancement. See Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel [i]s not constitutionally ineffective in failing to [take action if] . . . it would have been futile for counsel to have done so . . . ."); Carter v. Lee, No. 99-10, 202 F.3d 257 (table), 1999 WL 1267353, at *11 (4th Cir. Dec. 29, 1999) (unpublished) ("Appellate counsel [is] not ineffective for failing to raise [an issue] on appeal [that] is plainly without merit."); see also United States v. Bell, Civ. Action No. 13-5809, Crim. Action No. 09-672, 2016 WL 3638116, at *5 n.2 (E.D. Pa. July 6, 2016) (unpublished) ("Because the application of the enhancement was appropriate, counsel was not ineffective for failing to raise a meritless claim.").

For the forgoing reasons, Ground Three lacks merit.

## CONCLUSION

Petitioner has not shown entitlement to collateral relief.

23

**IT IS THEREFORE RECOMMENDED** that Petitioner's Section 2255 Motion (Docket Entry 35) be denied without a certificate of appealability.

_/s/ L. Patrick Auld_
**L. Patrick Auld**
**United States Magistrate Judge**

February 23, 2021